UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEVE HOLLAWAY,

                            Plaintiff,          **1:16-cv-00927-MAT**

                                                           **DECISION AND ORDER**

          -vs-

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

## I.    INTRODUCTION

Represented by counsel, Steve Hollaway ("Plaintiff") has brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II.    PROCEDURAL BACKGROUND

On November 19, 2012, Plaintiff protectively filed an application for SSI, alleging disability beginning November 21, 2009 due to cardiac conditions, dyslipidemia, depression, and anxiety. Administrative Transcript ("T.") 83, 138-45. Plaintiff's application was initially denied and he timely requested a hearing, which was held before administrative law judge ("ALJ") David S. Lewandowski on August 15,

2014. T. 34-82. At the hearing, Plaintiff amended his alleged onset date to September 27, 2012. T. 10.

On February 19, 2015, the ALJ issued an unfavorable decision. T. 7-27. Plaintiff's request for review was denied by the Appeals Council on September 23, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2014. T. 12.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 27, 2012, the amended alleged onset date. T. 12. At step two, the ALJ determined that Plaintiff had the severe impairments of coronary artery disease with stent placement and status post myocardial infarction, hypertension with headaches, kidney disease, and obesity, and the non-severe impairments of cysts in his liver, vision problems, major depressive disorder, and post-traumatic stress disorder with substance conditions. T. 13-16. At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they did not meet or medically equal the severity of a listed impairment. T. 16. In

particular, the ALJ considered Listings 4.02, 4.04, 6.02, 6.04, and Sections 4.00 and 11.00 in reaching this determination. T. 16-17.

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he must avoid industrial hazards, can only occasionally perform postural activities, and cannot climb ladders, ropes, or scaffolds. T. 17.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. T. 22. At step five, the ALJ relied on the testimony of a vocational expert to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations housekeeping cleaner, ticket seller, and mail clerk. T. 23-24. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 24.

**IV. DISCUSSION**

    **A. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that

supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff contends that remand of this matter for further administrative proceedings is necessary because: (1) the ALJ erred at step two in finding that Plaintiff's depressive disorder was non-severe and in failing to assess Plaintiff's panic disorder; and (2) the ALJ failed to appropriately weigh the medical opinions of record and relied on his own lay opinion in assessing Plaintiff's RFC. For the reasons discussed below, the Court finds these arguments without merit.

**B. Analysis at Step Two**

Plaintiff's first argument is that the ALJ erred at step two of the sequential analysis, both because he determined that Plaintiff's depressive disorder was non-severe and because he failed to assess Plaintiff's panic disorder. Having thoroughly considered the evidence of record, the Court finds that the ALJ's step two analysis was adequate and supported by substantial evidence.

At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Where a claimant has mental impairments, the ALJ applies a "special technique" in assessing

severity, which involves rating the degree of functional limitation in four categories: 1) activities of daily living; 2) social functioning; 3)concentration, persistence and pace; and 4) episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). A mental impairment is considered non-severe if "the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). Application of the "special technique" is required at "the second and third steps of the five step framework." *Id.* at 265. The ALJ's written decision must "reflect application of the [special] technique, and ... 'include a specific finding as to the degree of limitation in each of the [four] functional areas.' " *Id.* (quoting 20 C.F.R. § 404.1520a(e)(2)); *see also* 20 C.F.R. § 416.920a(e)(2).

In this case, the ALJ appropriately applied the special technique in determining that Plaintiff's depressive disorder was non-severe. The ALJ initially noted that Plaintiff did not seek mental health care until after he filed for DIB. T. 14. The ALJ further noted that Plaintiff has consistently had normal mental status examinations when examined by physicians and that he has never been admitted for a psychiatric hospitalization. *Id*. The ALJ afforded great weight to the opinion of consultative psychologist Dr. Gregory Fabiano, who examined Plaintiff on February 19, 2013, and opined that, while Plaintiff has mental impairments, they are not significant enough to interfere with his ability to function on a daily basis. T. 14, 265. The ALJ further

-5-

afforded some weight to the opinion of non-examining state agency medical consultant Dr. J. Echevarria, who reviewed Plaintiff's medical records and found that Plaintiff's mental impairments were non-severe. T. 14, 88.

Relying on Dr. Fabiano and Dr. Echevarria's opinions, as well as the other medical evidence of record, the ALJ concluded that Plaintiff had no limitations in his activities of daily living, mild limitations in his social functioning, mild limitations in concentration, persistence, and pace, and had not experienced any episodes of decompensation or deterioration that had been of extended duration. T. 15-16. Accordingly, "[b]ecause [Plaintiff's] medically determinable impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area," the ALJ concluded that Plaintiff's depressive disorder was non-severe. T. 16.

The Court finds no error in the ALJ's conclusion that Plaintiff's depressive disorder was non-severe. The ALJ throughly considered the relevant evidence and applied the special technique as required by the applicable regulations. Moreover, Dr. Fabiano and Dr. Echevarria's opinions, which were uncontradicted by any other physician, provided substantial evidence for the ALJ's conclusions.

Plaintiff contends that the ALJ should have given more weight to the findings of licensed clinical social worker ("LCSW") Juliet Maloney. This argument lacks merit. LCSW Maloney never issued a medical source statement assessing Plaintiff's functional limitations.

Instead, Plaintiff appears to contend that the ALJ should have relied upon the observations set forth in LCWS Maloney's treatment records. However, LCSW Maloney's treatment records support the conclusion that Plaintiff's mental impairments were non-severe. At Plaintiff's first visit on November 15, 2012, LCSW Maloney observed that his eye contact and activity level were within normal limits, that his speech was clear and productive with no signs of psychosis, and that his insight and judgment were fair to good. T. 314. Similarly, on June 13, 2013 and July 18, 2013, LCSW Maloney observed that Plaintiff's thought processes were logical, that his concentration was fair to good, that his insight, judgment, and impulse control were all good, and that his recent and remote memory were intact. T. 323, 325. While LCSW Maloney did on one occasion assess Plaintiff as having a global assessment of functioning ("GAF") score of 45 (*see* T. 314), the ALJ explained that he afforded no weight to this finding, because it was inconsistent with LCSW Maloney's treatment records. T. 15. The Court finds that the ALJ's assessment of Plaintiff's mental impairments was largely consistent with LCSW Maloney's observations, and that the ALJ adequately explained any discrepancies. Accordingly, the Court finds no error in the ALJ's treatment of LCSW Maloney's records.

Turning to Plaintiff's diagnosis of panic disorder, the Court does agree with Plaintiff that the ALJ should have expressly mentioned this diagnosis at step two. However, "[i]t is the claimant's burden to show at step two that [he] has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal

quotation omitted), and a step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. *Id.* at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment"). In this case, the same analysis that led the ALJ to conclude that Plaintiff's depressive disorder was non-severe could lead only to the conclusion that Plaintiff's panic disorder was non-severe. In particular, the Court notes that Dr. Fabiano expressly considered Plaintiff's panic disorder, but nonetheless opined that his mental impairments were not significant enough to interfere with his ability to function on a daily basis. T. 265. In the absence of any evidence that Plaintiff's panic disorder was a severe disorder or that it caused functional limitations distinct from those associated with the mental impairments the ALJ did explicitly consider, any error by the ALJ in failing to expressly assess Plaintiff's panic disorder was harmless and does not warrant remand.

Finally, the Court also rejects Plaintiff's contention that the ALJ erred in failing to include any mental limitations in the RFC. While it is true that an RFC assessment must include limitations associated with both severe and non-severe impairments, in this case, the medical evidence of record does not support any mental limitations that are inconsistent with the ALJ's RFC. To the contrary, Dr. Fabiano expressly opined that Plaintiff was capable of: following and

understanding simple directions; maintaining attention and concentration; maintain a regular schedule; can learn new tasks; can perform complex tasks independently; can make appropriate decisions; can relate adequately with others; and can appropriately deal with stress. T. 265. The ALJ's RFC assessment is wholly consistent with these findings by Dr. Fabiano. Accordingly, the Court finds that Plaintiff has failed to establish that the ALJ erred by not including additional mental limitations in his RFC finding.

**C. Weighing of the Medical Opinions of Record and RFC Assessment**

Plaintiff's next argument is that the ALJ failed to properly weight the medical opinions of record and that he instead substituted his own lay judgment. In particular, Plaintiff argues that (1) the ALJ improperly adopted only some of the limitations identified by consultative examiner Dr. Hongbiao Liu, (2) the ALJ "improperly diminished" the findings of LCSW Maloney, and (3) the ALJ failed to evaluate the opinion of Dr. Maritza Baez. Plaintiff also argues that the ALJ insufficiently accounted for Plaintiff's reported symptoms and mischaracterized Plaintiff's activities of daily living. The Court finds these arguments without merit.

Turning first to the ALJ's consideration of Dr. Liu's opinion, the Court finds that the ALJ's RFC finding is fully consistent with the limitations identified by Dr. Liu. Dr. Liu examined Plaintiff on March 1, 2013. T. 269-72. Plaintiff was in no acute distress, had a normal gait and stance, was able to perform a full squat, and had no musculoskeletal or neurologic abnormalities. T. 271-72. Dr. Liu

opined that Plaintiff had a mild limitation for prolonged walking and that he should avoid moderate exertional activity due to his cardiac condition. T. 272.

Contrary to Plaintiff's argument, the use of the terms "mild" and "moderate" did not render Dr. Liu's opinion impermissibly vague, because he "conduct[ed] a thorough examination and explain[ed] the basis for the opinion." *O'Bara v. Colvin*, No. 1:14-CV-00775 (MAT), 2017 WL 2618096, at *2 (W.D.N.Y. June 16, 2017) (internal quotation omitted). Dr. Liu's opinion in this case makes it clear what the assessed limitations are based on (Plaintiff's heel pain and cardiac condition, respectively), and Dr. Liu thoroughly examined Plaintiff. Accordingly, the Court does not find his opinion impermissibly vague.

Additionally, the ALJ's conclusion that Plaintiff is capable of light work is fully consistent with Dr. Liu's opinion. Light work does not require performing "activities requiring moderate or greater exertion." *Yassin v. Comm'r of Soc. Sec.*, No. 5:12-CV-1712 LEK/CFH, 2014 WL 795989, at *11 (N.D.N.Y. Feb. 27, 2014); *see also Cole v. Astrue*, No. 06 CIV. 769 RJS GAY, 2013 WL 4398974, at *4 (S.D.N.Y. Aug. 7, 2013) (ALJ did not err in concluding that individual who "needed . . . to be exempted from activities requiring mild-to-moderate exertion" was capable of performing light work) (internal quotation omitted); *cf.* 20 C.F.R. § 416.967(b) (light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up top 10 pounds). Moreover, individuals with mild limitations in walking can perform light work. *See Lewis v. Colvin,*

548 F. App'x 675, 678 (2d Cir. 2013) (ALJ properly found that individual who had mild limitations for walking could perform light work); *Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, *7 (N.D.N.Y.2013) (medical opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"). The Court therefore rejects Plaintiff's argument that the ALJ selectively adopted Dr. Liu's opinion.

Plaintiff argues that the ALJ erred in not contacting Dr. Liu to ask him about a notation in the record in which he was initially scheduled to examine Plaintiff on February 19, 2013, but that Plaintiff was instead sent to see his cardiologist due to elevated blood pressure. It is not clear to the Court what additional information Plaintiff contends was needed regarding this episode. The record clearly establishes that Plaintiff suffers from hypertension and the ALJ in fact found hypertension to be a severe impairment. Moreover, Plaintiff's cardiologist submitted medical records that include a report from Plaintiff's visit on February 19, 2013. T. 283. Plaintiff has failed to show that the ALJ was required to seek out additional information regarding Plaintiff's condition on this specific date.

With respect the ALJ's consideration of LCSW Maloney's treatment records, the Court has already determined, for the reasons set forth in section IV(B) of this Decision and Order that the ALJ appropriately considered LCSW's Maloney's observations.

Turning to the observations of Dr. Baez, the Court notes that, as with LCSW Maloney, Dr. Baez did not provide a medical source statement and did not offer any opinion regarding Plaintiff's functional limitations. Instead, Plaintiff argues that the ALJ should have given greater weight to the fact that Dr. Baez advised Plaintiff to manage his stress and to avoid triggers where possible. Nothing in Dr. Baez's treatment records suggests that this advice was related to any particular functional limitation. It is unremarkable that a physician whose patient reported experiencing stress would advise him to avoid stressful situations. Plaintiff has failed to demonstrate that Dr. Baez's treatment records required the ALJ to include any additional functional limitations in his RFC finding.

Plaintiff has also failed to demonstrate that the ALJ erred in considering Plaintiff's subjective reports of symptoms or that the ALJ misrepresented Plaintiff's activities of daily living. An ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Andrisani v. Colvin*, 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017) (internal quotation omitted). In this case, the ALJ provided a full and adequate explanation in support of his conclusion that Plaintiff's reports regarding his symptoms were less than fully credible. In

particular, the ALJ noted that Plaintiff had made inconsistent statements about his use of alcohol and marijuana, had discontinued taking prescribed medications, had contradicted himself many times when discussing his prior work history and activities of daily living, and had failed to follow through with recommended treatment. T. 13-20. These factors were appropriate considerations for the ALJ in finding that Plaintiff's subjective complaints were not fully credible. *See, e.g, See Dennis v. Berryhill*, No. 6:16-CV-6750-MAT, 2018 WL 488942, at *7 (W.D.N.Y. Jan. 19, 2018); *Crowley v. Barnhart*, 220 F. Supp. 2d 176, 180 (W.D.N.Y. 2002).

The ALJ also did not misrepresent Plaintiff's activities of daily living. As the ALJ noted, Plaintiff's own reports regarding his activities of daily living were inconsistent. Plaintiff made conflicting reports regarding caring for his newborn granddaughter, leaving his house, owning and working on various rental properties, and engaging in landscaping work. As the ALJ explained, Plaintiff "stated he engaged in a number of daily activities and then denied doing them." T. 19. Any lack of clarity regarding Plaintiff's daily activities is a result of Plaintiff's own inconsistent statements, not misrepresentations by the ALJ.

Finally, to the extent that Plaintiff's brief may be read as arguing that further development of the record was required regarding Plaintiff's ability to deal with stress, that argument is without merit. As set forth above, Dr. Fabiano expressly considered Plaintiff's mental impairments and opined that he could "appropriately

deal with stress." T. 265. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information." *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999). Here, there were no obvious gaps in the record regarding Plaintiff's ability to deal with stress, and Plaintiff has not identified any records that were missing from Plaintiff's medical history. The ALJ was therefore not under any obligation to seek further information related to this issue.

In sum, and for all the reasons set forth above, the Court finds that the ALJ appropriately weighed and considered the medical opinions of record and that his RFC assessment was supported by substantial evidence. Accordingly, the Court finds that remand of this matter is not warranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                **S/Michael A. Telesca**

                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    March 30, 2018
          Rochester, New York